```
THOMPSON COBURN LLP
JOHN L. VIOLA, CSB 131407
KEITH J. RASHER, CSB 299022
jviola@thompsoncoburn.com
10100 Santa Monica Blvd., Suite 500
Los Angeles, California 90067
Tel: 310.282.2500 / Fax: 310.282.2501

Attorneys for Defendant
MANDEX INC.
```

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALBERT ARCHER, an individual, BEAU CARPENTER, an individual, KYLE HERNANDEZ, an individual, and JUAN PEREZ, an individual,<br><br>    Plaintiffs,<br><br>    v.<br><br>MANDEX INC., a corporation, APEX SYSTEMS, LLC, a corporation, INSIGHT GLOBAL, LLC, a corporation, JASON JENSEN, an individual, and DOES 1 through 25, inclusive,<br><br>    Defendants. | CASE NO. '22CV1077 JLS BLM<br><br>**DECLARATION OF JASON JENSEN IN SUPPORT OF INSIGHT GLOBAL, LLC'S, REMOVAL OF ACTION TO FEDERAL COURT** |

I, Jason Jensen, declare as follows:

1. I was employed by MANDEX, Inc. ("MANDEX"), as an Electronic Technician III from December 17, 2018 until November 15, 2021 and as a Subject Matter Expert III from November 16, 2021 to May 16, 2022. As a result, I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, I could and would testify competently to such facts.

2. I have never been or served as an owner, director, officer, or managing agent of MANDEX, Insight Global, LLC ("Insight"), or Apex Systems, LLC ("Apex"). Moreover, neither Insight nor Apex ever employed me. Rather, out of the three named entity defendants in this

lawsuit, I have only worked for and been employed by MANDEX.

3. MANDEX, which is headquartered in Virginia, is a high-technology engineering and technical services firm that focuses on and provides services in a variety of fields, including but not limited to information technology, network design and support, as well as research and development program management and administrative support. Many of the contracts it services/performs are through the federal government and/or one of its agencies (such as the Department of Defense). As such, it has contracts and provides services throughout the United States as well as overseas.

4. Despite MANDEX'S national (if not international) presence, my positions only involved assisting the Program Manager on certain projects located in the Southwestern area of the United States. I did not oversee or manage any projects nor did I hold a position with MANDEX that would involve national or company-wide responsibilities. Moreover, I never held a position higher than Subject Matter Expert III at MANDEX nor did I ever have any general oversight authority over the entirety of the Southwestern area in which I worked or all projects/contracts located therein. Indeed, I never was or acted as some form of "regional manager" for MANDEX at any given time.

5. In both my capacity as an Electronic Technician III and Subject Matter Expert III at MANDEX, I was responsible for assisting the Program Manager on the projects/contracts specifically assigned to the Program Manager by the company, with the assigned projects on which I assisted mainly being in California. I did so pursuant to the instructions, guidelines, and policies and procedures dictated by MANDEX'S corporate office and the contract(s) applicable to the project, not my own. Additionally, my tasks in both these positions generally included keeping track of project goals and/or metrics, supervising the team assigned to that project, troubleshooting service-based issues that arose, and reporting progress on the projects to my superiors.

6. Overall, neither of my positions at MANDEX involved project management. Instead, I was responsible for assisting the Program Manager with respect to the specific projects/contracts assigned to him and was not responsible for developing, dictating, or

formulating company policy, including but not limited to those related to wage and hour policies and/or practices, either for the Southwestern region of MANDEX or nationally.  In fact, I understand that MANDEX'S corporate executives as well as Human Resources department are responsible for doing so, and I only abided by and followed the policies they published and/or implemented when performing my duties.  Further, I am not aware of any of the choices made by the Program Manager that I provided input on or assisted with as having any impact on MANDEX'S employee policies and procedures on a widespread or national scale.  Rather, any choices I made in my two positions at MANDEX were limited to assisting the Program Manager on the projects to which he was assigned and those discrete decisions were focused on addressing issues that arose during the performance of the those specific contracts/projects assigned to him.

7. I was not responsible for creating and did not create MANDEX'S corporate policies regarding how employees are paid for or record their time worked in either of my two positions at MANDEX. I did not have authority to set the work hours and wages paid for MANDEX'S employees, including for employees working on projects in the Southwestern area of the United States. I did not personally pay wages to MANDEX's employees. Such wages were paid by MANDEX itself.

8. I also did not set or determine the wages that MANDEX'S employees would be paid for the projects that I worked on in the Southwestern area of the United States. I did not determine the "prevailing wage" rates paid to MANDEX'S employees, and I did not tell MANDEX'S employees to work "off the clock." I implemented MANDEX'S existing business policies and practices, which I never had authority to create, nor actually created.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 21st day of July, 2022, at _____Albany_____, _____Georgia_____.

_____Jason Jensen_____
Jason Jensen